**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zulema Reed, | No. CV-19-04666-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Zulema Reed's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant SSA Commissioner's Response Brief (Doc. 18, Def. Br.), and Plaintiff's Reply (Doc. 21, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 10–36) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on February 5, 2016. (R. at 13.) For each application Plaintiff alleged an amended disability onset date beginning on June 1, 2015. (R. at 40.) Her claims were denied initially on September 2, 2016, and upon reconsideration on December 22, 2016.

(R. at 13.) On February 15, 2018, Plaintiff appeared before the ALJ for a hearing regarding her claims. (R. at 13.) On August 3, 2018, the ALJ denied Plaintiff's claims, and on May 7, 2019, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1, 29.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: dysfunction of major joint, affective anxiety disorder, and borderline personality disorder. (R. at 15.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 29.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 16.) The ALJ also calculated Plaintiff's residual functional capacity (RFC) and found that Plaintiff has the RFC to perform light work, except she "can lift and/or carry twenty-five pounds frequently, twenty pounds occasionally; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can frequently climb ramps and stairs, balance, and stoop; she can occasionally climb ladders, ropes and scaffolds, kneel, crouch and crawl; she is to avoid moderate exposure to hazards; she is limited to simple, repetitive tasks; and she is to have no more than occasional social interaction." (R. at 18.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy and is not disabled. (R. at 28.)

## II. LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises several arguments for the Court's consideration. Plaintiff's arguments primarily challenge the ALJ's evaluation of Plaintiff's symptom testimony and

the available medical opinions. (Pl. Br. at 13, 20.) The Court agrees with Plaintiff's arguments that the ALJ misevaluated Plaintiff's symptom testimony and the opinion of Plaintiff's examining doctor, Maryann Latus, Ph.D. Accordingly, the Court reverses the ALJ's decision.[1]

      **A.    Substantial evidence does not support the ALJ's rejection of Plaintiff's symptom testimony.**

Plaintiff testified that her functional limitations stem from disabling physical and mental impairments. She testified that her physical impairments cause pain in her neck, back, and extremities. (R. at 43–44.) Further, she testified that her symptoms cause her to lie down several times per day and limit her ability to walk, sit, and stand without limitations. (R. at 43–48.) She requires a cane to ambulate without falling. (R. at 46.) Plaintiff also testified that her mental impairments cause her to stay in bed and cry several times per week. (R. at 51.) She testified that she has issues with her memory and concentration. (R. at 52.) Finally, she testified that she has been hospitalized three times because of issues with self-harm. (R. at 52.)

The ALJ rejected Plaintiff's testimony for three reasons. First, the ALJ found that Plaintiff "has engaged in a somewhat normal level of daily activity and interaction." (R. at 19.) Specifically, the ALJ found that her daily activities "replicate those necessary for obtaining and maintaining employment." (R. at 19.) Second, the ALJ found that Plaintiff's treatment of her impairments has been "routine, [and] conservative." (R. at 20.) Finally, the ALJ found that the medical evidence does not substantiate the magnitude of Plaintiff's allegations. (R. at 20.)

An ALJ performs a two–step analysis to evaluate a claimant's testimony regarding

---

[1] Plaintiff also argues that the ALJ erred by failing to recognize Plaintiff's amended disability onset date. (Pl. Br. at 20.) Plaintiff is correct that the ALJ erred in failing to evaluate Plaintiff's claims using the correct onset date. (R. at 13.) Nevertheless, this error was harmless because the ALJ necessarily evaluated Plaintiff's alleged disability during the period Plaintiff alleges she was disabled since the ALJ evaluated Plaintiff's disability claims over a period of time that completely included the time period Plaintiff alleges she was disabled. (R. at 14.) *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012)

pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Though the ALJ offered valid reasons for rejecting Plaintiff's testimony, none are supported by substantial evidence. Contrary to the ALJ's conclusion, the medical evidence largely substantiates Plaintiff's allegations regarding her mental limitations. The ALJ's finding that "[m]ental status evaluations were generally within normal limits between April 6, 2016 and December 13, 2017," belies the evidence contained in the medical records that the ALJ used to support that finding. (R. at 25.) While the mental status evaluations contained in the records cited by the ALJ were generally normal, those same records also evidence serious functional limitations due to Plaintiff's mental impairments that the ALJ did not identify or discuss. (R. at 25.)

For example, the ALJ cites a September 9, 2016, hospital Discharge Summary to support his conclusion that "[m]ental status evaluations were generally within normal limits." (R. at 25, 972.) However, the ALJ does mention that the same medical record indicates that Plaintiff was admitted to the hospital because of her suicidal intentions, self-harm, and auditory hallucinations. (R. at 970.) Furthermore, Plaintiff was still having auditory hallucinations and paranoia at the time of her discharge from the hospital. (R. at

972.) Similarly, despite the normal mental status evaluations between April 6, 2016 and December 13, 2017, Plaintiff was hospitalized three times during that period because of suicidal intentions. (R. at 970, 1139, 1320, 1549, 1585–99.) These incidents plainly contradict the ALJ's conclusion that Plaintiff's mental status was normal during the relevant period of time. Instead, Plaintiff's medical records reflect pervasive and consistent issues due to her mental impairments, including issues with hallucinations and self-harm. (R. at 1004, 1007, 1011, 1150, 1210, 1216, 1445, 1449, 1476.) Thus, substantial evidence does not support the ALJ's conclusion that the medical evidence contradicts Plaintiff's allegations. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).

Similarly, substantial evidence does not support the ALJ's conclusion that Plaintiff's treatment has been conservative. The record indicates that Plaintiff's treatment of both her physical and mental impairments has been extensive rather than conservative. Plaintiff has repeatedly received narcotic pain medications, neuropathic-pain medication, nerve block and ablation procedures, and epidural steroid injections. (R. at 751–52, 1079–84, 1086–89, 1090–93, 1098–1100, 1102–04, 1110–12, 1114–16, 1124–25, 1128–29.) These treatments are not properly considered conservative. *See Garrison*, 759 F.3d at 1015 n. 20.

Finally, substantial evidence does not support the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with her alleged disability. The ALJ failed to make the required specific findings that demonstrate that Plaintiff's actual daily activities are inconsistent with disability. Instead, the ALJ made only a general finding that Plaintiff's daily activities "replicate those necessary for obtaining and maintaining employment." (R. at 19.) *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2014) (finding ALJ improperly relied on a claimant's activities where there was no evidence as to the extent, manner or complexity of the activities). The daily activities the ALJ cited, without greater specificity, do not indicate that Plaintiff can perform work on a sustained basis. (R. at 19.) These findings were necessary because Plaintiff testified that she could perform limited daily activities only with significant restrictions due to her impairments. (R. at 45–54.) Thus, the

ALJ's failure to make specific findings regarding Plaintiff's daily activities was error. Consequently, the ALJ did not offer a sufficient basis for rejecting Plaintiff's symptom testimony.

      **B.    Substantial evidence does not support the ALJ's evaluation of the opinion of Plaintiff's examining doctor, Maryann Latus, Ph.D.[2]**

On August 16, 2016, Maryann Latus, Ph. D., performed a psychiatric examination of Plaintiff. (R. at 957.) She reviewed only Plaintiff's function report and Dr. Alexander Piatka's previous psychiatric examination findings. (R. at 957.) Dr. Latus found that Plaintiff met the diagnostic criteria for posttraumatic stress disorder and persistent depressive disorder with mood congruent psychotic features. (R. at 961.) During the examination, Plaintiff reported experiencing visual hallucinations of her deceased uncle. (R. at 959.) Plaintiff was very tearful during the exam and Dr. Latus found that her "mental health symptoms may impact her functioning in that she may have difficulty leaving her home at times, initiating contact with others, trusting other people, maintaining ongoing relationships with others and focusing on tasks." (R. at 961.) Dr. Latus found that Plaintiff would have limitations in (1) sustained concentration and persistence, (2) social interaction, and (3) adapting to change, but could function in a work environment "if she has ample time to complete the task . . . [and] if she feels that she is in a supportive work environment." (R. at 962.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to

---

[2] The Court has considered Plaintiff's arguments regarding the ALJ's consideration of the remaining medical opinions contained in the record. (Pl. Br. at 20, 24–25.) The Court rejects the arguments and finds that the ALJ correctly evaluated the remaining medical opinions contained in the record.

greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

The ALJ found that Dr. Latus opined that Plaintiff has mild to moderate functional limitations and gave Dr. Latus's opinion great weight.[3] (R. at 27.) This finding is not supported by substantial evidence. Even if Dr. Latus's opined to limitations could be considered mild to moderate, such an opinion would not be supported by substantial evidence because of the severe limitations Plaintiff demonstrated during Dr. Latus's examination. (R. at 957–62.) Instead, Plaintiff's tearful presentation and visual hallucinations during the exam are inconsistent with a conclusion that Dr. Latus opined to only mild or moderate limitations. Neither are the several limitations that Dr. Latus opined "may impact her functioning." (R. at 961.) Furthermore, Dr. Latus opined equivocally regarding Plaintiff's limitations, noting that Plaintiff could function in a workplace only "if she has ample time to complete the task . . . [and] if she feels that she is in a supportive work environment." (R. at 962.) The ALJ did not address these limitations or present them to the vocational expert. (R. at 57–67.) Accordingly, it is inconclusive whether Dr. Latus's opinion is consistent with Plaintiff sustaining work, and thus, substantial evidence does not support the ALJ's consideration of the opinion.

**C.    The proper remedy is to remand this case for further proceedings.**

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *See Garrison*, 759 F.3d at 1020. It applies if each part of a three–part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ

---

[3] The ALJ also gave great weight to the opinion of Dr. Piatka and found that Dr. Piatka opined to mild to moderate limitations. (R. at 27.) Dr. Piatka performed a consultative examination in January 2014, but reviewed minimal medical records in preparation for the exam. (R. at 592.) Furthermore, Dr. Piatka found that Plaintiff has significant work-related restrictions, including a poor ability to sustain work attendance. (R. at 598–99.)

must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Although the ALJ errantly rejected Plaintiff's symptom testimony and Dr. Latus's opinion, the Court finds that further administrative proceedings would serve a useful purpose. Accordingly, the Court remands this case for further development of the record. Significantly, no treating physician has opined to disabling limitations. Furthermore, the medical opinions and evidence regarding Plaintiff's physical limitations support the ALJ's conclusions. For example, the ALJ noted that the medical records reflect Plaintiff's inconsistent use of assistive devices for walking, and Dr. John Peachy had concerns regarding the veracity of Plaintiff's statements. (R. at 22, 23.) Conversely, the ALJ understated the limitations opined to by Dr. Piatka and Dr. Latus, and additionally, these opinions may be of limited significance because the doctors relied on minimal medical records in conducting their exams. (R. 592–93, 957.) Accordingly, further proceedings are required to clarify Plaintiff's functional limitations and capabilities

**IT IS THEREFORE ORDERED** reversing the August 3, 2018 decision of the Administrative Law Judge (R. at 10–29), as upheld by the Appeals Council on May 7, 2019 (R. at 1–6.)

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

///

///

///

///

///

1 **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of May, 2020.

Honorable Steven P. Logan
United States District Judge